**SECOND DIVISION**
**MILLER, P. J.,**
**HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 14, 2022**

# In the Court of Appeals of Georgia

A21A1570. BUTLER v. BUTLER et al.

PIPKIN, Judge.

In March 2020 appellant Jenny Butler left her job as a front office worker at Madison Medical Associates, P. C. ("Madison Medical) due to concerns that she would contract COVID-19 from patients. Although Butler was initially awarded benefits by a Georgia Department of Labor ("Department") claims examiner, Madison Medical appealed; after a hearing, the Administrative Hearing Officer ("AHO") reversed the award. Butler appealed to the Board of Review ("BOR"), which adopted the findings of the AHO and affirmed the decision to deny benefits. Butler then filed a petition for judicial review in the superior court, and the superior court summarily affirmed the decision of the BOR. Butler filed an application for discretionary appeal to this Court and, after we granted her application, a timely notice of appeal. As more

fully set forth below, we now vacate and remand for further proceedings consistent with this opinion.

> Judicial review of an administrative decision requires this Court to determine that the findings of fact are supported by 'any evidence' and to examine the soundness of the conclusions of law that are based upon the findings of fact. When this Court reviews a superior court's order in an administrative proceeding, our duty is not to review whether the record supports the superior court's decision but whether the record supports the final decision of the administrative agency. This Court reviews legal conclusions de novo.

(Citations and punctuation omitted.) *Hudson v. Butler*, 337 Ga. App. 207, 207-208 (786 SE2d 879) (2016).

The General Assembly has declared that "economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this state." OCGA § 34-8-2. "[I]n light of the expressed purpose of the Employment Security Law, OCGA § 34-8-1 et seq., courts should liberally construe the provisions of the unemployment statutes in favor of the employee, and statutory exceptions and exemptions that are contrary to the expressed intention of the law should be narrowly construed." *Hudson*, 337 Ga. App. at 209.

Butler filed a claim for unemployment benefits on April 1, 2020. The claims examiner initially awarded benefits; under the section headed "reasoning," the claims examiner found that Butler was let go by her employer due to lack of work.[1] Madison Medical appealed, and a hearing was held before an AHO. The evidence introduced at the administrative hearing shows that Butler started working at Madison Medical in 2018. While there, her primary responsibility was to check out patients after their appointments, which put her into contact with most of the patients who came into the office. On March 25, 2020, Butler learned that a family was expected to arrive at Madison Medical for COVID-19 testing. Butler testified that she decided to leave work that day due to concerns that she would contract COVID-19; Butler testified, and the AHO found, that Butler has heart disease and that she "feared for her life" if she became ill.

Before she left work that day, Butler sent a text message to Madison Medical's CEO, Dr. Fletcher, stating "Hope you aren't upset and understand this has gotten real, and just feel like I need to self quarantine myself, cannot risk it. *If I still have a job when this passes, I will be back.*" (Emphasis supplied.) Dr. Fletcher responded that

---

[1] The AHO indicated that the claims form was not in the file and the form has not been included in the record on appeal.

3

he understood and for Butler to "be safe." Five days later, Butler sent Dr. Fletcher another text to the effect that she felt guilty for staying home but she did not feel like she could risk it. Butler asked Dr. Fletcher his "thoughts" on applying for unemployment benefits, but he did not respond to her text message. Butler did not return to work.

When questioned by the AHO, Butler acknowledged that she never asked about working in a different part of the office where she would not come into contact with patients and that she did not ask about tele-working. Butler also gave additional testimony concerning her heart disease and explained that she had previously had three heart attacks and two stents placed in her heart. Butler also testified that she spoke with the providers she worked for and was advised that COVID-19 could affect her heart disease.

The AHO subsequently denied benefits under OCGA § 34-8-194 (1) (A), which disqualifies an individual for benefits when "such individual has left the most recent employer voluntarily without good cause in connection with the individual's most recent work." Although the AHO credited Butler's testimony that she has heart disease and left her job because she was concerned that she would contract COVID-

4

19 from patients, the AHO reasoned that Butler was disqualified from receiving benefits because she

> failed to present testimony and/or evidence to show that she did everything possible to keep her job. Although being concerned for one's own health is a good personal reason, it is not a good work-connected reason. Continuing work was available for the claimant. The employer did not lay off the claimant. The claimant quit her job for personal reasons. Therefore, disqualification is required.

In her written argument to the BOR, Butler asserted that the Department's COVID-19 Emergency Rule ("Emergency Rule") created a general exception to the Department's rules and that the exception applied to her situation. Without addressing the argument, the BOR adopted the findings and conclusion of the AHO and disqualified Butler from benefits. In doing so, the BOR specifically declined to remand the proceedings back to the AHO to reopen the proceedings for the purpose of taking additional evidence related to this issue. See Ga. Comp. R. & Regs. r 300-2-5-.03 (2) (c) (BOR has discretion to remand the case to the AHO in order to take additional evidence as deemed necessary).

On appeal, Butler acknowledges that a claimant is typically disqualified from receiving unemployment benefits when he or she voluntarily leaves a job unless the

5

claimant shows a good work-connected cause for quitting. Butler argues however, that the AHO, BOR, and superior court erred by not considering whether she was entitled to benefits under the Emergency Rule, which was promulgated in March 2020 in response to the COVID-19 pandemic.[2] Under this rule, which is applicable to all claims filed on or after March 14, 2020, "certain individuals unable to work due to the COVID-19 public health emergency who have an expectation of returning to work when the emergency ceases *shall be considered involuntarily unemployed through no fault of their own.*" (Emphasis supplied.) Ga. Comp. R. & Regs., r. 300-2-9-.06 (5). Although not exhaustive, the Emergency Rule references five groups of individuals to whom it applies, including those individuals "with a recognized medical condition making that individual particularly susceptible to COVID-19[.]" Id. at (5) (c).

Although the AHO found that Butler has heart disease and recognized that she feared for her health due to her potential contact with COVID-19 patients at her job, the AHO did not consider whether Butler should be considered involuntarily separated from her employment and thus eligible for benefits under the Department's

---

[2] The Emergency Rule was added as subsection (5) to Ga. Comp. R. & Regs., r. 300-2-9-.06 pertaining to Vacation.

COVID-19 Emergency Rule. Specifically, neither the AHO nor the Board considered whether Butler "had an expectation of returning to work once the emergency ceases" and whether Butler's heart condition makes her "particularly susceptible to COVID-19." Accordingly, under the facts of this case, this matter must be remanded to the superior court with direction that it remand the case to the Department for further proceedings consistent with this opinion.

*Judgment vacated and case remanded with direction. Miller, P. J., and Hodges, J., concur.*